IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br>One Tower Square<br>Hartford, CT  06183<br><br>                Plaintiff,<br><br>   v.<br><br>CAPITOL DEVELOPMENT DESIGN, INC.,<br>4600 Powder Mill Road, Suite 200<br>Beltsville, MD  20705<br><br>LADONNA MAY,<br>1262 Talbert Street, SE, Unit 5A<br>Washington, DC  20020<br><br>ADE ADENARIWO,<br>1262 Talbert Street, SE, Unit 9A<br>Washington, DC  20020<br><br>BRITNEY BENNETT,<br>1262 Talbert Street, SE, Unit 5B<br>WASHINGTON, DC  20020<br><br>THERESA BROOKS,<br>1262 Talbert Street, SE, Unit 20A<br>Washington, DC  20020<br><br>DAVINA CALLAHAN,<br>1262 Talbert Street, SE, Unit 14A<br>Washington, DC  20020<br><br>DENINE EDMONDS,<br>1262 Talbert Street, SE, Unit 10B<br>Washington, DC  20020<br><br>CIERA JOHNSON,<br>1262 Talbert Street, SE, Unit 7B<br>Washington, DC  20020<br><br>ROBIN MCKINNEY,<br>1262 Talbert Street, SE, Unit 15A | Case No.   1:23-cv-03009 |

Washington, DC  20020

STANTON VIEW DEVELOPMENT, LLC,
1054 31st Street, NW
Washington, DC  20007

RIVEREAST AT ANACOSTIA, LLC,
1054 31ST Street, Suite 290
Washington, DC  20007

MADDOX ENGINEERING, INC.,
100 Park Avenue
Rockville, MD  20850

M&F CONCRETE, INC.,
9515 Contractor's Court, Suite 100
Manassas, VA  20109

and

SKARDA AND ASSOCIATES, INC.
2439 North Charles Street
Baltimore, MD  21218

                   Defendants.

# COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Travelers Casualty and Surety Company of America ("Travelers"), for its Complaint for Declaratory Judgment against Defendants Capitol Development Design, Inc. ("CDDI"), LaDonna May, Ade Adenariwo, Britney Bennett, Theresa Brooks, Davina Callahan, Ciera Johnson, Robin McKinney, Stanton View Development, LLC, Rivereast at Anacostia, LLC, Maddox Engineering, Inc., M&F Concrete, Inc., and Skarda and Associates, Inc., alleges as follows:

## NATURE OF THE ACTION

1. Travelers brings this lawsuit to obtain a judicial determination and declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, with respect to the parties' rights and obligations

2

under a design professionals liability insurance policy that Travelers issued to CDDI effective April 19, 2020 to April 19, 2021 (the "Policy") for a lawsuit that is pending against CDDI (among others) in the Superior Court for the District of Columbia (the "May Lawsuit").

2. Specifically, Travelers is entitled to a declaration that it has no obligation to defend or indemnify CDDI because the Policy provides coverage only for **Claims**[1] first made during the **Policy Period**, and the May Lawsuit is deemed to be a **Claim** first made years before the Policy's 4/19/20 - 4/19/21 **Policy Period**, when CDDI was a party to a 2016 arbitration proceeding involving the same **Wrongful Acts** and/or **Related Wrongful Acts** alleged in the May Lawsuit.

## PARTIES

3. Travelers is an insurance company incorporated under the laws of the State of Connecticut and has its principal place of business in Hartford, Connecticut. Travelers, therefore, is a citizen of Connecticut.

4. CDDI is a Maryland corporation with its principal place of business in Beltsville, Maryland. CDDI, therefore, is a citizen of Maryland.

5. LaDonna May ("May") is an individual domiciled in Washington, D.C., and is, therefore, a citizen of Washington, D.C.

6. Ade Adenariwo ("Adenariwo") is an individual domiciled in Washington, D.C., and is, therefore, a citizen of Washington, D.C.

7. Britney Bennett ("Bennett") is an individual domiciled in Washington, D.C., and is, therefore, a citizen of Washington, D.C.

---

[1] Terms appearing in bold are defined in the Policy.

8.  Theresa Brooks ("Brooks") is an individual domiciled in Washington, D.C., and is, therefore, a citizen of Washington, D.C.

9.  Davina Callahan ("Callahan") is an individual domiciled in Washington, D.C., and is, therefore, a citizen of Washington, D.C.

10. Danine Edmonds ("Edmonds") is an individual domiciled in Washington, D.C., and is, therefore, a citizen of Washington, D.C.

11. Ciera Johnson ("Johnson") is an individual domiciled in Washington, D.C., and is, therefore, a citizen of Washington, D.C.

12. Robin McKinney ("McKinney") is an individual domiciled in Washington, D.C., and is, therefore, a citizen of Washington, D.C.

13. May, Bennett, Brooks, Callahan, Edmonds, Johnson and McKinney (collectively, the "May Claimants") are plaintiffs in the currently pending May Lawsuit and are joined in this action solely to be bound by the judgment in the action. Travelers seeks no affirmative relief against the May Claimants and, in the event they stipulate to be bound by the Court's declaration, Travelers will dismiss them from the action.

14. Stanton View Development, LLC ("Stanton") is a Maryland limited liability company with its principal place of business in Washington, D.C.  After conducting a reasonable investigation of publicly available information disclosed by the Office of the Secretary of State of Maryland, Travelers has determined that the identity and citizenship of Stanton's members is not publicly available.  However, based upon limited publicly available information, as well as the allegations in the May Lawsuit and a prior lawsuit filed against CDDI by Stanton, and the court records from Stanton's prior bankruptcy proceeding, Travelers is informed and believes that Stanton's members are domiciled in, and citizens of, Maryland,

4

and not Connecticut. Therefore, Travelers reasonably believes that Stanton is a citizen of Maryland and is not a citizen of Connecticut.

15. Rivereast at Anacostia, LLC ("Rivereast") is a Washington D.C. limited liability company with its principal place of business in Washington, D.C. After conducting a reasonable investigation of publicly available information made available through the Office of the Secretary of Washington, D.C., Travelers has determined that the identity and citizenship of Rivereast's members is not publicly available. However, based upon limited publicly available information, as well as the allegations in the May Lawsuit and a prior lawsuit filed by Rivereast against CDDI, and the court records from Rivereast's prior bankruptcy proceeding, Travelers is informed and believes that Rivereast's members are domiciled in, and citizens of, Maryland, and not Connecticut. Therefore, Travelers reasonably believes that Rivereast is a citizen of Maryland and is not a citizen of Connecticut.

16. Maddox Engineering and Surveyors, Inc. ("Maddox") is a Maryland corporation, with its principal place of business in Rockville, Maryland. Maddox, therefore, is a citizen of Maryland.

17. M&F Concrete, Inc. ("M&F") is a Virginia corporation with its principal place of business in Manassas, Virginia. M&F, therefore, is a citizen of Virginia.

18. Skarda and Associates, Inc. ("Skarda") is a Maryland corporation with its principal place of business in Baltimore, Maryland. Skarda, therefore, is a citizen of Maryland.

19. Stanton, Rivereast, Maddox, M&F, and Skarda (collectively, the "Cross/Counter-Claimants") have each filed either a cross-claim or a counter-claim against CDDI in the May Lawsuit (the "Cross/Counter-Claims"), and are joined in this action solely to be bound by the judgment in this action. Travelers seeks no affirmative relief against the Cross/Counter-

Claimants and, in the event they stipulate to be bound by the Court's declaration, Travelers will dismiss them from the action.

## JURISDICTION AND VENUE

20. Federal subject matter jurisdiction exists in this action, pursuant to 28 U.S.C. § 1332, because it is an action between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

21. Pursuant to 28 U.S.C. § 1391(b)(1) and (2), venue is proper in this district because the May Claimants reside in this district and the May Lawsuit is pending in this district.

## THE POLICY

22. Travelers issued the Policy – a Travelers 1st Choice Design Professionals Liability Policy No. 106720790 – to the **Named Insureds** Capitol Development Design, Inc. and CDDI, LLC with a **Policy Period** effective April 19, 2020 to April 19, 2021. A true and correct copy of the Policy is attached to this Complaint as Exhibit A.

23. The Policy's limit of liability for "Professional Services" is $5,000,000 for each **Claim**, not to exceed $5,000,000 for all **Claims**, subject to a $20,000 deductible for each **Claim**, and a $60,000 deductible for all **Claims**.

24. Pursuant to Form DPL-1001 Ed. 11-08, the Policy's Insuring Agreement states as follows:

> **I.  INSURING AGREEMENT**
>
> The Company will pay on behalf of the **Insured**, **Damages** and **Defense Expenses** for any **Claim** first made during the **Policy Period** that is caused by a **Wrongful Act** committed on or after any applicable Retroactive Date set forth in ITEM 5 of the Declarations, provided that no **Principal Insured** on the Knowledge Date set forth in ITEM 5 of the Declarations had any basis to believe that such **Wrongful Act** might reasonably be expected to be the basis of a **Claim**.

25. The Policy contains the following definitions, among others:

6

    B.    *Claim* means:

        1.    a demand for money or services;
        2.    a civil proceeding commenced by service of a complaint or similar pleading; or
        3.    a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding,

against any **Insured** for a **Wrongful Act**.

A **Claim** will be deemed to be made on the earliest date such notice thereof is received by any **Principal Insured**.

\*\*\*

    E.    *Damages* means money which an **Insured** is legally obligated to pay as settlements, judgments and compensatory damages; punitive or exemplary damages if insurable under the applicable law most favorable to the insurability of punitive or exemplary damages; or prejudgment and postjudgment interest.

*Damages* does not include the following:

        1.    Civil or criminal fines; sanctions; liquidated damages; payroll or other taxes; penalties; the multiplied portion of any multiplied damage award; equitable or injunctive relief; any return, withdrawal, restitution or reduction of professional fees, profits or other charges; or damages or types of relief deemed uninsurable under applicable law.

        2.    **Defense Expenses.**

    F.    *Defense Expenses* means reasonable and necessary fees, costs and expenses, incurred by the Company, or by the **Insured** with the Company's written consent, that result directly from the investigation, defense, settlement or appeal of a specific **Claim**, provided that **Defense Expenses** do not include any payments made pursuant to section II. SUPPLEMENTARY PAYMENTS of the Professional Liability Coverage.

\*\*\*

    J.    *Insured* means any **Insured Person**, **Named Insured**, **Predecessor Firm**, or **Described Client**.

    K.    *Insured Person* means any natural person who:

1. is the sole owner of, or is or was a partner in, the **Named Insured** or **Predecessor Firm**;
2. was or is a member of the board of managers, director, executive officer, or shareholder of the **Named Insured** or **Predecessor Firm**;
3. was or is an employee of the **Named Insured** or **Predecessor Firm**; or
4. was or is an **Independent Contractor**

provided that such person is acting within the scope of their duties on behalf of the **Named Insured** or **Predecessor Firm**.

L. *Named Insured* means the person or entity set forth in ITEM 1 of the Declarations.

\*\*\*

P. *Policy Period* means the period from the Inception Date to the Expiration Date set forth in ITEM 2 of the Declarations. In no event will the **Policy Period** continue past the effective date this policy is cancelled or not renewed.

\*\*\*

U. *Principal Insured* means a member of the board of managers, director, executive officer, natural person partner, owner of a sole proprietorship, principal, risk manager, or in-house general counsel of the **Named Insured.**

\*\*\*

X. *Related Wrongful Acts* means **Wrongful Acts** which are logically or causally connected by reason of any fact, circumstance, situation, transaction, event, or decision.

All **Related Wrongful Acts** are a single **Wrongful Act**, and all **Related Wrongful Acts** will be deemed to have been committed at the time the first of such **Related Wrongful Acts** was committed whether prior to or during the **Policy Period**.

Y. *Wrongful Act* means any:

1. actual or alleged act, error, omission, or **Personal Injury Offense** in the rendering of, or failure to render, **Professional Services**;
2. **Network and Information Security Offense**; or
3. **Pollution Incident.**

by any **Insured** or by any person or entity, including any joint venture, for whom the **Insured** is legally liable.

26. The Policy includes the following terms regarding defense of **Claims**:

   ### III. CLAIM DEFENSE

   A. The Company has the right and duty to defend any **Claim** covered by this policy, even if the allegations are groundless, false or fraudulent, including the right to select defense counsel with respect to such **Claim**, provided that the Company is not obligated to defend or to continue to defend any **Claim** made after the applicable Professional Liability Coverage Limit is exhausted by payment of **Damages** and **Defense Expenses**.

   B. The **Insured** will cooperate with the Company and, upon the Company's request:

      1. assist in the defense and settlement of **Claims**;

      2. assist in enforcing rights of contribution or indemnity against any person or entity which may be liable to the **Insured** because of a **Wrongful Act**; and

      3. attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.

27. The Policy includes the following terms regarding Related Claims:

   ### IX. RELATED CLAIMS

   All **Claims** or **Potential Claims** for **Related Wrongful Acts** will be considered a single **Claim** or **Potential Claim**, whichever is applicable. All **Claims** or **Potential Claims** for **Related Wrongful Acts** will be deemed to have been made the date:

   A. the first of such **Claims** for **Related Wrongful Acts** was made; or

   B. the first notice of such **Potential Claim** for **Related Wrongful Acts** was received by the Company, whichever is earlier.

## THE ARBITRATION

28. In 2015, CDDI entered into a contract with Stanton pursuant to which CDDI agreed to perform third party geotechnical construction inspection and material testing services

for a condominium project then known as Grandview II Estates in Washington, D.C. (the "Project").

29. In or before August 2016, a dispute arose between CDDI and others regarding responsibility for the structural failure of a modular retaining wall constructed at the Project.

30. In September 2016, CDDI agreed with Stanton and FES Group, LLC ("FES") to submit to binding arbitration (the "Arbitration") the dispute concerning responsibility for the structural failure of a modular retaining wall constructed on the Project, and entered into an Arbitration Agreement dated September 21, 2016 (the "Arbitration Agreement").  A true and correct copy of the Arbitration Agreement executed by CDDI is attached to this Complaint as Exhibit B.

31. Pursuant to the Arbitration Agreement, CDDI agreed that the arbitrator, GeoDesign & Engineering, Inc. ("GDI"), would issue a decision in which GDE was expected to assign responsibility for the retaining wall structural failure to one or more parties.

32. Pursuant to the Arbitration Agreement, CDDI agreed that the arbitrator's decision would be final and binding, and subject to the Maryland Uniform Arbitration Act, and CDDI further agreed to waive litigation and any other form of dispute resolution.

33. Also Pursuant to the Arbitration Agreement, CDDI agreed that if GDE determined that CDDI was partly or fully responsible for the retaining wall failure, any damage assessed as being CDDI's responsibility would first be deducted from amounts Stanton owed CDDI under CDDI's contract with Stanton for services on the Project.

34. GDE issued a GeoTechnical Evaluation Services Report dated May 1, 2017 (the "Arbitration Report") pursuant to which GDE described its process for evaluating the situation, as well as its findings regarding the modular retaining wall's structural failure.

35. In the Arbitration Report, GDI concluded that all the parties involved in the arbitration were responsible, to various degrees, for the saturation and softening of the soils around the modular retaining wall, and further noted the importance of ensuring proper soil compaction beneath a retaining wall when an apartment building will be on top of the retaining wall.

36. In the Arbitration Report, GDI assigned to CDDI 60% of the responsibility - the largest percentage of all parties - for the structural failure of the retaining wall at the Project.

37. As a result of the arbitrator's findings and assignment of 60% responsibility for the structural failure of the retaining wall, CDDI was required to pay the costs of repairs in proportion to its share of liability.

38. On information and belief, CDDI paid, and/or provided a credit to Stanton in the amount of, $3,600, representing CDDI's 60% share of responsibility for the failure of the retaining wall at the Project.

## THE RIVEREAST LAWSUIT

39. In February 2021, CDDI notified Travelers that CDDI was named as a defendant in a lawsuit filed on September 9, 2020, captioned *Rivereast at Anacostia, LLC, et al. v. SGA Companies, Inc., et al.*, Case No 2020 CA 004070 B, in the Superior Court of the District of Columbia (the "Rivereast Lawsuit"), in which Rivereast of Anacostia, LLC ("Rivereast") and Stanton sought damages against CDDI arising out of construction defects at the Project. A true and correct copy of the Complaint filed in the Rivereast Lawsuit is attached to this Complaint as Exhibit C.

40. In the Rivereast Lawsuit, plaintiffs Rivereast (the condominium declarant for the Project) and Stanton (collectively, the "Rivereast Claimants") alleged that unit owners of the

condominium development made claims to Rivereast and Stanton regarding structural problems with units.

41. The Rivereast Claimants further alleged that CDDI had contracted with Stanton to provide a geotechnical study for the Project and that CDDI's scope of work included visiting and observing the site conditions, staking out and drilling test borings, analyzing groundwater levels, lab testing samples, and providing a final report with recommendations regarding the further work on the Project.

42. The Rivereast Claimants further alleged that CDDI failed to properly conduct soil, water, and subsurface investigation; analyze the results of the same; and supervise the soil compaction process, including, without limitation, properly testing the soils for their suitability as fill material and not testing that the soils were properly compacted, all of which allowed for structures to be constructed on improperly compacted soils.

43. The Rivereast Claimants asserted claims against CDDI for breach of contract/indemnification and negligence.

44. Travelers provided a defense to CDDI in the Rivereast Lawsuit, which was eventually dismissed in August 2022.

## THE MAY LAWSUIT

45. In December 2022, the May Claimants were granted leave to file a First Amended Complaint in the May Lawsuit, captioned *Ladonna May, et al. v. Stanton View Dev., LLC, et al.*, Case No. 2021-CA-000266 B, in the Superior Court of the District of Columbia, naming CDDI as a defendant in the May Lawsuit.

46.     On April 7, 2023, the May Claimants filed a Second Amended Complaint, which is the current operative pleading in the May Lawsuit. A true and correct copy of the Second Amended Complaint is attached to this Complaint as Exhibit D.

47.     In the May Lawsuit, the plaintiffs allege that CDDI (among others) was negligent with respect to the design and engineering services provided in connection with the construction of a condominium building located at the Project (the "Building").

48.     Specifically, the May Claimants allege that they purchased condominium units in the Building, and immediately upon moving into the units they experienced serious structural issues with the units.

49.     The May Claimants allege that CDDI owed a duty of reasonable care when rendering its engineering services, and that CDDI breached that duty by providing less than competent supervision, testing, and analysis, thereby endangering the structural foundation of the residences in the Building. Moreover, the May Claimants allege that CDDI's breaches and failure to address and remediate its negligent acts and omissions resulted in physical damage to the elements of the Building.

50.     The May Claimants allege in the May Lawsuit that CDDI failed to properly conduct soil, water, and subsurface investigation; analyze the results of the same; and supervise the soil compaction process. They allege that this includes, without limitation, properly testing the soils for their suitability as fill material and not testing that the soils were properly compacted, all of which allowed for structures to be constructed on improperly compacted soils.

51.     The May Claimants allege that they are third-party beneficiaries to the contract pursuant to which CDDI provided its services on the Project, and CDDI breached the contract

13

as a result of its failure to provide competent supervision, testing, and analysis of the structural foundation of the residences of the Building.

52. The May Claimants further allege that CDDI's breaches and failure to address or remediate the alleged problems with the modular retaining wall on the Project (i.e., the same modular retaining wall that was the subject of the Arbitration), among other things, have caused the May Claimants to suffer damages.

53. In the Second Amended Complaint in the May Lawsuit, the plaintiffs assert against CDDI causes of action for Negligence (Count XX) and Breach of Contract (Count XXI).

54. Stanton and Rivereast filed a joint cross-claim against CDDI in the May Lawsuit, seeking indemnification and contribution from CDDI for any judgment entered against Stanton and/or Rivereast in the May Lawsuit.

55. Skarda filed a counter-claim against CDDI in the May Lawsuit, seeking contribution and equitable indemnification from CDDI for any judgment entered against Skarda in the May Lawsuit.

56. Maddox filed a cross-claim against CDDI in the May Lawsuit, seeking indemnification and contribution from CDDI for any judgment entered against Maddox in the May Lawsuit.

57. M&F filed a cross-claim against CDDI in the May Lawsuit, seeking indemnification and contribution from CDDI for any judgment entered against M&F in the May Lawsuit.

## COUNT I
**(Declaratory Judgment – No Duty to Defend or Indemnify)**

58. Travelers realleges paragraphs 1 through 57 above as if set forth fully as this paragraph 58.

59. The Policy provides that a **Claim** will be deemed to be made on the earliest date such notice thereof is received by any **Principal Insured**.

60. The Policy also provides that any **Claims** based upon or arising out of the same **Wrongful Act** or **Related Wrongful Acts** shall be considered a single **Claim,** which **Claim** shall be deemed to have been made on the date the first **Claim** for such **Wrongful Act**, or for one or more such **Related Wrongful Acts**, is made against any of the **Insureds**, whether such date is before or during the **Policy Period.**

61. The Policy defines **Wrongful Act** as any alleged act, error, omission, or **Personal Injury Offense** in the rendering of, or failure to render, **Professional Services** by any **Insured** or by any person or entity, including any joint venture, for whom the **Insured** is legally liable.

62. The Policy defines **Related Wrongful Acts** as **Wrongful Acts** which are logically or causally connected by reason of any fact, circumstance, situation, transaction, event, or decision.

63. The Arbitration was a **Claim** first made against CDDI in or prior to September 2016, when the Arbitration was initiated against CDDI and other parties.

64. The Arbitration, the Rivereast Lawsuit and the May Lawsuit (including the Cross/Counter-Claims filed in the May Lawsuit) are **Claims** for the same **Wrongful Acts** or **Related Wrongful Acts**, as they are all based upon, and/or arose out of, the same facts, circumstances, situation, transaction, event, or decision – i.e., CDDI's alleged failure to properly conduct soil, water, and subsurface investigation, analyze the results of the same, and supervise the soil compaction process in connection the construction of the modular retaining wall and, ultimately, the Building.

65. Since the Arbitration, the Rivereast Lawsuit and the May Lawsuit (including the Cross/Counter-Claims filed in the May Lawsuit) are for the same **Wrongful Act** or **Related Wrongful Acts**, they constitute a single **Claim**, deemed to have been first made in or before September 2016.

66. As a result, the May Lawsuit (including the Cross/Counter-Claims) is a **Claim** deemed first made before the **Policy Period** began in April 2020.

67. A present and substantial controversy exists between the parties, requiring the Court's declaration, as the May Lawsuit (including the Cross/Counter-Claims) has been asserted against CDDI, and Travelers contends that it has no obligation to defend or indemnify CDDI in connection with the May Lawsuit (including the Cross/Counter-Claims) because it is a **Claim** deemed first made before the **Policy Period.**

WHEREFORE, Travelers respectfully requests that the Court enter a judgment:

a. Declaring that the Policy does not provide coverage to CDDI for the May Lawsuit, including the Cross/Counter-Claims;

b. Declaring that Travelers has no obligation to defend or indemnify CDDI in connection with the May Lawsuit, including the Cross/Counter-Claims; and

c. Granting such other relief as the Court may deem just and proper.

Dated: October 10, 2023        Respectfully submitted,

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,

By: /s/ *Michael E. Barnsback*
Michael E. Barnsback (Bar No. VA015)
Christopher M. Helsel (Bar No. VA162)
O'Hagan Meyer
2560 Huntington Ave., Suite 204
Alexandria, Virginia 22303
(ph.) (703) 775-8601
mbarnsback@ohaganmeyer.com
chelsel@ohaganmeyer.com

and

Christopher J. Bannon (*pro hac vice* admission requested)
Kevin Kanavy (*pro hac vice* admission requested)
Aronberg Goldgehn Davis & Garmisa
330 N. Wabash Avenue, Suite 1700
Chicago, IL 60611
(ph.) (312) 755-3175
(fax) (312) 222-6375
cbannon@agdglaw.com
kkanavy@agdglaw.com

*Attorneys for Plaintiff Travelers Casualty and Surety Company of America*

17