IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>CAPITOL DEVELOPMENT DESIGN, INC. *et al*.,<br><br>*Defendants*. | No. 1:23-cv-03009 |

**CAPITOL DEVELOPMENT DESIGN, INC.'S MOTION FOR A
STAY OF PROCEEDINGS PENDING RESOLUTION OF THE MAY LAWSUIT**

Defendant Capitol Development Design, Inc. ("CDDI"), by and through counsel, respectfully submits this Motion for a Stay of Proceedings pending the resolution of *Ladonna May, et al. v. Stanton View Dev., LLC, et al.*, Case No. 2021-CA-000266-B (the "May Lawsuit"), currently pending in the Superior Court of the District of Columbia.

This lawsuit seeks to resolve whether plaintiff, Travelers Casualty and Surety Company ("Travelers"), is obligated to defend and indemnify CDDI against the claims asserted in the May Lawsuit. Travelers' position is that the "Related Claims" provision of its policy absolves it of any coverage obligation because the "wrongful acts" giving rise to the May Lawsuit are "related" to wrongful acts alleged against CDDI in 2016 and resolved in a 2017 arbitration. The parties to the May Lawsuit, which includes parties not appearing in this coverage suit, have developed an extensive factual record through extended discovery while litigating both the claimed damages and the cause(s) of the claimed damages. Resolution of those fact questions will be necessary to this Court's resolution of whether the wrongful acts alleged in the 2017 arbitration and those in the May Lawsuit

1

claims are "related wrongful acts" as that term is defined in the Policy. However, resolution of those questions is best left to the May Lawsuit, where the necessary parties are present, the necessary discovery has occurred, and the necessary experts have been retained. Allowing this insurance coverage matter to proceed too far ahead of the May Lawsuit would risk severe prejudice to CDDI's defense against the May Lawsuit. The Court should therefore stay proceedings in this case to allow the facts necessary to determine Travelers indemnity obligation are resolved in the May Lawsuit.

I.     **BACKGROUND**

     A.     **The Underlying May Lawsuit Makes Claims Against CDDI and Others for Errors, Omissions, Poor Workmanship, and Negligent Performance of Professional Services**

CDDI sought insurance coverage from its insurer, Travelers, for claims made against it in the May Lawsuit[1]. In that suit, a number of owners of condominiums (the "May Plaintiffs") have sued the property developer, the District of Columbia, and a number of subcontractors, including CDDI, that were involved in the construction of the condominium building. The May Plaintiffs allege a number of "structural and foundational defects" and "inadequate foundation design, detailing, and construction" related to the building caused significant settling and cracking in the structure. Compl. Ex. D, ¶¶ 25, 65, 93, 125, 162, 189, 224, 289, 327 (ECF No. 1-4). Among other things, the May Plaintiffs allege that the settling and cracking is a result of 1) unworkmanlike, negligent, and faulty construction, 2) improper designs, drawings, and specifications, 3) inaccurate survey data for the property, 4) improper soil, water, and subsurface investigations, 5) unworkmanlike concrete pouring and analysis, including the failure to properly pour footers that left parts of the building and walls unsupported, and 6) sewer line breaks. Compl. Ex. D, ¶¶ 327-334, 349 (ECF No. 1-4). The May

---

[1] The May Lawsuit was filed after a separate lawsuit, filed by the condominium association for the property and making similar allegations, was dismissed for lack of prosecution. *Rivereast at Anacostia, LLC, et al. v. SGA Companies, Inc., et al.*, Case No 2020 CA 004070 B.

Plaintiffs allege many other problems with the building and the developer which may or may not relate to the settling issues, including electrical overloading issues, leaky plumbing, water intrusion issues, the development of mold, misrepresentations made during sales of the units, damages to personal belongings during repair work, and a persistent sewage smell. Compl. Ex. D, ¶¶ 30, 44, 69, 80-86, 91-92, 108-114, 123-24, 129, 134-50 159-61, 166, 179-80, 204, 209-11, 219-22, 247-52, 285-87, 293, (ECF No. 1-4). The May Plaintiffs allege that they have been required to evacuate the building and claim damages for the total loss of their condominium units. Compl. Ex. D, ¶¶ 358-59 (ECF No. 1-4).

The May Lawsuit has progressed slower than this suit due to an appeal, extended discovery, and multiple rounds of dispositive briefing. Discovery is now closed and the final summary judgement motion was ruled upon on August 19, 2025 (two motions seeking reconsideration of or relief from the rulings are pending). With the exception of an order allowing the District of Columbia to renew a prior motion to dismiss, the deadline to file dispositive motions has passed. The May Lawsuit is set for trial to begin on June 15, 2026.

### B. Travelers' Policy Provides Broad Coverage for Claims for Errors, Omissions, Poor Workmanship, and Negligent Performance of Professional Services

Travelers sold a professional liability policy to CDDI covering the policy period of April 19, 2020 through April 19, 2021 (the "Policy"). Compl. Ex. A (ECF No. 1-1). The Policy provides indemnity for, and a duty to defend against, claims arising out of "wrongful acts." "Wrongful Act means any … actual or alleged act, error, omission, … in the rendering of, or failure to render, Professional Services… by any Insured, or by any person or entity, including any joint venture, for whom the Insured is legally liable." *Id.* at 15. The Policy covers claims made in the policy period, regardless of when the relevant "wrongful acts" occurred. The Policy also includes a "Related Claims" provision that states that all "wrongful acts" which "are logically or causally connected by

3

reason of any fact, circumstance, situation, transaction, event, or decision" are "related wrongful acts" and that all claims arising out of "related wrongful acts" constitute a single claim that was first made on the date that the first related claim was made. *Id.* at 14, 22.

### C. Travelers Has Acknowledged its Defense Obligation Under the Policy but Not its Indemnity Obligation

On March 31, 2021, Travelers agreed to provide a defense, acknowledging that there was potential coverage under the Policy for the May Plaintiffs' claims against CDDI. *See* Ex. A (TRV 000222). More than two years later, on June 12, 2023, Travelers issued a supplemental coverage position in which it stated that the "knowledge date" and "Related Claims" provisions of the policy may preclude coverage for some or all claims against CDDI.[2]  *See* Ex. B (TRV 000098).

In its June 12, 2023 letter, Travelers noted a 2015 rain event, the 2017 GDE arbitration report addressing allegations about CDDI's work, and the subsequent remediation efforts as the basis for invoking the "Related Claims" provision. *See* Ex. B. Travelers alleges that CDDI paid $3,600 to resolve its responsibility for the issues addressed in the GDE report. Compl. ¶ 38. Travelers stated In its June 12, 2023 letter "while the [May Plaintiffs'] allegations are disputed and certainly may never be proven by Plaintiffs, some or all of the claims asserted may ultimately not be covered by the Policy and therefore may not be paid by Travelers" and that Travelers was therefore providing a defense against the May Lawsuit subject to a reservation of rights. In both its March 31, 2021 and June 12, 2023 letters, Travelers conceded the need for factual findings in the May Lawsuit in order to determine coverage, stating that "At this time, it is not possible to make a conclusive determination as to coverage." *See* Exs. A, B.

Three months later, Travelers assigned a new claims adjuster who, by letter of September 11,

---

[2] In its Complaint, Travelers does not assert the "knowledge date" as a basis for denying coverage. CDDI reserves all rights

2023, first took the position that that no resolution of the underlying litigation was necessary to conclusively determine that the "Related Claims" provision barred coverage. *See* Ex. C (TRV 000105). A month later, on October 10, 2023, Travelers filed the instant lawsuit, seeking a declaratory judgment that it had no duty to defend or to indemnify CDDI on the basis that *all* of the May Plaintiffs' claims are "related claims" to the claim made prior to the policy period. Travelers has continued to defend CDDI in the May Lawsuit as of the date of this filing.

## II. ARGUMENT

In this suit, Travelers seeks a declaration that it has no duty to defend or to indemnify CDDI against the claims made in the May Lawsuit. The duty to defend is determined solely by looking "to whether the allegations included in the complaint state a cause of action within the policy's coverage, and whether the allegations raise the possibility of coverage." *Am. Cont'l Ins. Co. v. Pooya*, 666 A.2d 1193, 1197 (D.C. 1995) (explaining that the analysis is not limited to the causes of action enumerated by the underlying plaintiff, but that "it is appropriate to examine the complaint for all plausible claims encompassed within the complaint."). "[I]t is possible that the allegations of a complaint would bring it within coverage of the policy, the insurer is obligated to defend, even if it ultimately is not required to pay a judgment" *Id.* at 1198. The duty to indemnify, however, is narrower and "depends rather upon the true facts." *Id.*; *Salus Corp. v. Cont'l Cas. Co.*, 478 A.2d 1067, 1069–70 (D.C. 1984) (also noting also that "by agreeing to defend Salus against the … claims, the insurers have in effect conceded that the allegations in both complaints fall within the coverage of the policies.").

A district court has discretion to "stay a declaratory judgment action during the pendency of [a] parallel state court proceeding [ ]." *Cincinnati Ins. Co. v. All Plumbing, Inc.*, 812 F.3d 153, 158 (D.C. Cir. 2016) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 279, 288–90, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)). "Courts in this district and others regularly stay insurance coverage disputes

where a claim involving a duty to indemnify is dependent on the resolution of the facts" in an underlying lawsuit against the insured. *Rockhill Ins. Co. v. Hoffman-Madison Waterfront, LLC*, No. CV 18-2104 (ABJ), 2020 WL 13612610, at *3 (D.D.C. July 14, 2020) (staying a coverage suit until resolution of the underlying action because "the Court agrees with the parties that the indemnification claims are not ripe at this time").[3] In *Terra Nova Ins. Co. v. 900 Bar, Inc*, the Third Circuit explained that, in the insurance context, proceeding to hear a declaratory judgment action would allow an insurer "to drag the parties to a tort action into federal court to try a portion of the overall controversy" and that this could both defeat the reasonable expectations of the insured and prejudice the insured's defense against that underlying tort action. 887 F.2d 1213, 1224–25 (3d Cir. 1989) (noting that "the insured could well be collaterally estopped from relitigating the [facts that purportedly preclude coverage] in the subsequent state court trial").

Travelers is providing a defense and has twice conceded that it cannot conclusively determine whether coverage is afforded under its Policy based upon the allegations alone. Nevertheless, Travelers seeks to prematurely resolve its duty to indemnify by arguing that all of the May Plaintiffs' claims are "related" to the $3,600 claim resolved by the 2017 GDE arbitration report.[4] Resolving this question at present would require the Court to know the "true facts" about whether the wrongful acts

---

[3] *See also Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established.") (Delaware law); *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) ("But the actual [facts are] a question properly left, in the first instance, to the court deciding the underlying lawsuit. It is thus settled in Pennsylvania that the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit."); *Zurich Ins. Co. v. Alvarez By & Through Calva*, 669 F. Supp. 307, 309 (C.D. Cal. 1987) (declining to hear an insurer's declaratory judgment action because doing so "would require the Court to determine facts which also may be at issue" in the underlying suit and it would be improper to resolve those with only a subset of the parties in federal court).

[4] For the avoidance of doubt, CDDI does not concede that any issue raised or resolved in the 2017 GDE report constitutes a "wrongful act" or a "claim" under the Policy.

6

giving rise to the May Plaintiffs' claims are "are logically or causally connected by reason of any fact, circumstance, situation, transaction, event, or decision" to the purported claim resolved in 2017. The May Plaintiffs are proceeding on several disparate factual theories and are claiming damages from numerous injuries, such that the relatedness of the purported claims cannot be resolved until the "true facts" are adjudicated in the May Lawsuit.

These unresolved questions include the cause or causes of the alleged injuries and the structural problems. The May Plaintiffs allege negligence, poor workmanship, and/or poor design on the part of numerous parties. For example, if the jury in the May Lawsuit were to find that the injuries the Plaintiffs complain of are the result of a failure to properly lay concrete footings or the result of a sewage line break, then these damages would not be "logically or causally connected" to the issues that were addressed by the 2017 arbitration. Similarly, any portion of the May Plaintiffs' damages that results from faulty electrical or plumbing work would likely have no relation to the claims first asserted in 2016 and resolved in 2017. These issues are being adjudicated by the necessary parties in the May Lawsuit, where the factual record is fully developed, the necessary experts have been prepared, and the matter is set for trial.

Indeed, both CDDI and Travelers have tacitly acknowledged that resolving the facts in this lawsuit would require importing significant portions of the May Lawsuit's record by indicating in their Rule 26(B)(2) reports a need to call some or all of the experts that have been retained in the underlying case. *See* Exs. D, E (these experts are expected to opine in the May Lawsuit on, *inter alia*, causation and damages issues). Allowing this case to get ahead of the May Lawsuit would result in those experts giving their first testimony in this case, rather than as expert witnesses in the matter for which they were retained. They would have to testify about what opinions they expect to offer in the May Lawsuit before they have actually given that testimony. This could severely curtail or limit their

testimony in the May Lawsuit and prejudice CDDI's defense. Resolution of any of the May Plaintiffs' factual theories in this suit further risks prejudicing CDDI's defense in the May Lawsuit by forcing CDDI to litigate in this insurance case the cause of injuries that the May Plaintiffs have not yet proven the existence of at all. Any findings against CDDI on the fact of an injury or the cause of an injury would be made without the benefit of the full record and array of parties in the May Lawsuit, but would nevertheless become fodder for collateral estoppel arguments against CDDI in the May Lawsuit.

### III. CONCLUSION

For the foregoing reasons, the Court should grant CDDI's Motion for a Stay of Proceedings Pending Resolution of the May Lawsuit.

Date: September 19, 2025

Respectfully submitted,

*/s/ Scott D. Boyle*
Scott D. Boyle (DC Bar ID: 1780562)
Andrew M. Reidy (DC Bar ID: 412146)
Nossaman LLP
1401 New York Avenue, NW
Suite 800
Washington, DC 20005
Phone: 202-336-4774
sboyle@nossaman.com
areidy@nossaman.com

*Counsel for Defendant Capitol Development Design, Inc.*

### Locale Rule 7(m) Statement

Pursuant to Local Rule 7(m) of this Court, the undersigned counsel conferred with counsel for Travelers on September 17 and 18, 2025, who indicated that Travelers opposes this Motion for a Stay of Proceedings.

*Scott D. Boyle*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on the 19th day of September 2025, a copy of the foregoing Notice of Appearance was filed with the Clerk of the Court using the electronic case filing system and copies were electronically served upon the following:

**Counsel for Plaintiff Travelers Casualty & Surety Company of America:**
Michael E. Barnsback
Christopher M. Helsel
O'Hagan Meyer
2560 Huntington Avenue, Suite 204
Alexandria, VA 22303
Email: mbarnsback@ohaganmeyer.com
Email: chelsel@ohaganmeyer.com

Christopher J. Bannon
Aronberg Goldgehn
225 W. Washington Street
Suite 2800
Chicago, IL 60606
Email: cbannon@agdglaw.com

**Counsel for Defendant Maddox Engineering, Inc.:**
Joshua Tyler Carback
Franklin & Prokopik
The B&O Building
2 N. Charles Street, Suite 600
Baltimore, MD 21201
Email: jcarback@fandpnet.com

**Counsel for Defendants Ade Adenariwo, Theresa Brooks, Denine Edmonds, Ciera Johnson, and Robin McKinney:**
Je Yon Jung
May Jung LLP
333 City Boulevard West, Suite 327
Orange, CA 92868
Email: jeyon@mayjung.com

**Counsel for Defendant M&F Concrete, Inc.:**

David B. Stratton
Jordan Coyne LLP
10201 Fairfax Boulevard, Suite 520
Fairfax, VA 22030
Email: d.stratton@jocs-law.com

**Counsel for Defendant Skarda and Associates, Inc.:**
Kathleen M. McDonald
Seraina Law Office LLC
401 E Pratt Street
Suite 2332
Baltimore, MD 21202
Email: kmcdonald@seraina-law.com

                                          */s/ Scott D. Boyle*
                                          Scott D. Boyle