## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>CAPITOL DEVELOPMENT DESIGN, INC. *et al.*,<br><br>*Defendants.* | No. 1:23-cv-03009-CRC |

**DEFENDANT CAPITOL DEVELOPMENT DESIGN, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO TRAVELERS' DUTY TO DEFEND**

### INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7(h), Defendant Capitol Development Design, Inc. ("CDDI") submits the following Statement of Undisputed Material Facts in support of its Motion for Partial Summary Judgment:

1.      Plaintiff Travelers Casualty and Surety Company of America ("Travelers") sold a Design Professionals Liability insurance policy to CDDI having policy No. 106720790 and covering the policy period of April 19, 2020 through April 19, 2021, a true and correct copy of which is attached to Travelers Complaint as Exhibit A. (Compl. Ex. A, at 8)[1].

2.      The Policy has a $5 million limit of liability, subject to a $20,000 deductible. (Compl. Ex. A, at 9, 36).

---

[1] For the Court's convenience, this exhibit is reattached to this Statement of Undisputed Material Facts as Exhibit AA.

3.      In the Policy, Travelers agrees as follows:

> [Travelers] will pay on behalf of the **Insured**, **Damages** and **Defense Expenses** for any **Claim** first made during the **Policy Period** that is caused by a **Wrongful Act** committed on or after any applicable Retroactive Date ….

(Compl. Ex. A, at 11).[2]

4.      The Policy defines "Claim" as follows:

> ***Claim*** means:
> 1. a demand for money or services;
> 2. a civil proceeding commenced by service of a complaint or similar pleading; or
> 3. a written request to toll or waive a statute of limitations relating to a potential civil or administrative proceeding, against any **Insured** for a **Wrongful Act**.
>
> A **Claim** will be deemed to be made on the earliest date such notice thereof is received by any **Principal Insured**.

(Compl. Ex. A, at 12).

5.      The Policy defines "Wrongful Act" as follows:

> ***Wrongful Act*** means any:
>
> actual or alleged act, error, omission, or **Personal Injury Offense** in the rendering of, or failure to render, **Professional Services**; … by any Insured, or by any person or entity, including any joint venture, for whom the Insured is legally liable.

(Compl. Ex. A, at 17).

6.      The Policy defines "Professional Services" as follows:

> ***Professional Services*** means only services in any of the following capacities:
> 1. Architect.
> 2. Engineer.

---

[2] Bold terms are defined in the Policy.  *See* Compl. Ex. A at 12–15, 17–18, 30.

       3. Land surveyor.
       4. Landscape architect.
       5. Construction manager.
       6. Scientist.
       7. Technical consultant.

(Compl. Ex. A, at 14).

7.     The Policy defines "Related Wrongful Acts" as follows:

> ***Related Wrongful Acts*** means **Wrongful Acts** which are logically or causally connected by reason of any fact, circumstance, situation, transaction, event, or decision.
>
> All **Related Wrongful Acts** are a single **Wrongful Act**, and all **Related Wrongful Acts** will be deemed to have been committed at the time the first of such **Related Wrongful Acts** was committed whether prior to or during the **Policy Period**.

(Compl. Ex. A, at 14).

8.     The Policy contains a provision titled "Related Claims" which reads as follows:

> All **Claims** or **Potential Claims** for **Related Wrongful Acts** will be considered as a single **Claim** or **Potential Claim** , whichever is applicable.  All **Claims** or Potential Claims for **Related Wrongful Acts** will be deemed to have been made the date:
>
> A. the first of such **Claims** for **Related Wrongful Acts** was made; or
>
> B. the first notice of such **Potential Claim** for **Related Wrongful Acts** was received by the Company, whichever is earlier.

(Compl. Ex. A, at 22).

9.     CDDI's professional liability coverage has been subject to a $20,000 deductible since at least 2014.  (Compl. Ex. A, at 9; Declaration of Marwan Mustafa ("Mustafa Decl.") Ex. M).

10.     CDDI primarily provides civil engineering, land development planning, landscape architecture, land surveying and geotechnical engineering services and Travelers was aware that CDDI provided these services when it sold the Policy.  (Marwan Aff. ¶ 4; Mustafa Decl. Ex. K).

11.     On June 19, 2014, CDDI and Stanton View Development, LLC executed a contract,

a true and correct copy of which is Exhibit A to the Declaration of Marwan Mustafa, obligating CDDI to perform a "Geotechnical Investigation and Study" of the land on which a condominium building (the "Building") was to be constructed and to deliver a "final geotechnical engineering report including a summary of field and laboratory investigation results, subsurface soil parameters, foundation bearing capacity, recommendations for the design of the site geogrid reinforced retaining walls, recommendations for pavement support and earthwork recommendations" ("Geotechnical Study Contract"). (Mustafa Decl. Ex. A).

12. On August 9, 2014, CDDI delivered its "Geotechnical Engineering Report," a true and correct copy of which is Exhibit B to the Declaration of Marwan Mustafa, its performance of the Geotechnical Study Contract. (Mustafa Decl. Ex. A; Mustafa Decl. Ex. B).

13. On October 6, 2014, CDDI and Stanton View Development, LLC executed a contract, a true and correct copy of which is Exhibit C to the Declaration of Marwan Mustafa, to provide a "caisson design report" to support the design of the Building ("Caisson Design Contract"). (Mustafa Decl. Ex. C). CDDI delivered this report on November 4, 2014. (Mustafa Decl. Ex. E, at 3).

14. On March 28, 2015, CDDI provided Stanton View Development, LLC with a contract, a true and correct copy of which is Exhibit D to the Declaration of Marwan Mustafa, for "Construction Inspection and Materials Testing" work which was later accepted by Stanton View Development ("Construction Supervision Contract"). (Mustafa Decl. Ex. D; Mustafa Decl. ¶ 9).

15. CDDI completed its performance of the Construction Supervision Contract in late 2015. (Mustafa Decl. ¶ 9).

16. The Geotechnical Study Contract, the Caisson Design Contract, and the Construction Supervision Contract were all independently negotiated and were not executed

pursuant to any master contract or common agreement.  (Mustafa Decl. Exs. A, C, D; Mustafa Decl. ¶ 10).

17.     On September 29, 2015, while the construction of the Building was ongoing, a flash flood event resulted in unexpected settling at the two corners of a recently completed modular retaining wall on the Building.  (Mustafa Decl. Ex. E).

18.     FES Group, LLC, the subcontractor that constructed the wall, estimated that the costs of the repairs would be $20,000-$30,000.  (Mustafa Decl. Ex. F).

19.     In September 2016, CDDI, FES Group, LLC, and Stanton View Development, LLC agreed to retain GeoDesign & Engineering, Inc. ("GDE"), to investigate the cause of the settling, to allocate the cost of repairs among four potentially responsible parties, and to make a recommendation for repairing the settled wall (the "GDE Arbitration").  (Mustafa Decl. Ex. E, at 1).

20.     Exhibit E to the Declaration of Marwan Mustafa, is a true and accurate copy of the May 1, 2017 report issued by GDE to resolve the GDE Arbitration.  (Mustafa Decl. Ex. E).

21.     CDDI paid $3,651.08 as its share of responsibility pursuant to the GDE Arbitration. (Mustafa Decl. Ex. G).

22.     Exhibit D to the Complaint in this matter is a true and accurate copy of the Second Amended Complaint in *LaDonna May, et al. v. Stanton View Dev., LLC, et al.*, Case No. 2021-CA-000266-B (D.C. Super. Ct. Jan. 29, 2021) ("May Lawsuit").  (Compl. Ex. D)[3].

23.     The May Lawsuit alleges that the Building is affected by an array of design defects and construction defects and seeks millions in damages on behalf of eight condominium owners.

---

[3] For the Court's convenience, this exhibit is reattached to this Statement of Undisputed Material Facts as Exhibit BB.

(Compl. Ex. D).

24.    In March 2021, CDDI promptly reported the first of the predecessor suits that were consolidated into the May Lawsuit to Travelers as a claim.  (Mustafa Decl. Ex. H).

25.    On March 31, 2021, Travelers issued a coverage decision, a true and correct copy of which is Exhibit I to the Declaration of Marwan Mustafa, in which it agreed to provide a defense against the May Lawsuit to CDDI. Travelers expressly referred to the prior GDE Arbitration, and stated that coverage could not be determined until the May Lawsuit was resolved because "[t]here are allegations being made by the [May] Plaintiffs that, if proven, will impact coverage."  (Mustafa Decl. Ex. I, at 3).

26.    On June 12, 2023, Travelers issued a supplemental coverage position, a true and correct copy of which is Exhibit J to the Declaration of Marwan Mustafa, in which it noted the 2015 flash flood event and the GDE Arbitration. Travelers discussed the GDE report, advised CDDI that "[a]t this time, it is not possible to make a conclusive determination as to coverage", and stated that it would continue to provide a defense against the May Lawsuit because coverage could not be conclusively determined at that time.  (Mustafa Decl. Ex. J, at 2, 5).

27.    On September 11, 2023, Travelers issued another supplemental coverage position, a true and correct copy of which is Exhibit K to the Declaration of Marwan Mustafa, in which it asserted, for the first time, the position that the May Lawsuit and the GDE Arbitration were related claims.  (Mustafa Decl. Ex. K).  Travelers did not withdraw its defense at this time.  (Mustafa Decl. Ex. K).

28.    Sea Level Engineering, LLC, an expert retained by the plaintiffs in the May Lawsuit, produced a report for the May Lawsuit in which it alleges that CDDI is partially responsible for the plaintiffs' damages because CDDI "should have cautioned the design team and

the owner/developer that stacking the retaining walls … was not sound engineering" and CDDI "should have recognized that supporting the building on the stacked retaining wall and the backfill drainage system was not an adequate and safe design." (Mustafa Decl. Ex. N at 18–19).

29.     The May Plaintiffs, in their opposition to CDDI's motion for summary judgment in the May Lawsuit, clarified that they are alleging no less than five breaches of CDDI's professional duty of care and expressly state the nature of each of those breaches as: "First, CDDI recommended an inadequate foundation system despite known challenging site conditions. … Second, CDDI failed to perform rigorous geotechnical analysis for the tiered wall system. … Third, CDDI failed in its quality control obligations. … Fourth, CDDI's testing and monitoring were grossly inadequate. … Fifth, CDDI failed to properly document changes and maintain effective communication and coordination throughout the Project." (Attached to this Statement of Undisputed Material Facts as Exhibit CC).

30.     The GDE Arbitration did not address allegations concerning the adequacy of the foundation system recommended by CDDI or the rigor of CDDI's pre-design geotechnical analysis. (Mustafa Decl. Ex. E).

Date: December 29, 2025

Respectfully submitted,
*/s/ Scott D. Boyle*
Scott D. Boyle (DC Bar ID: 1780562)
Andrew M. Reidy (DC Bar ID: 412146)
Nossaman LLP
1401 New York Avenue, NW
Suite 800
Washington, DC 20005
Phone: 202-336-4774
sboyle@nossaman.com
areidy@nossaman.com

*Counsel for Defendant Capitol Development Design, Inc.*