eFiled
4/28/2025 7:49:46 PM
Superior Court
of the District of Columbia

C23-cv-03009; Defs Mot. for Part. Summ.J.
MUSTAFA DECL. EXHIBIT CC

# SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LADONNA MAY, *et al.*, | 2020 CA 004070B |
| | 2021 CA 000266B |
| *Plaintiffs,* | 2021 CA 002268B |
| | (CONSOLIDATED) |
| v. | |
| | JUDGE YVONNE WILLIAMS |
| STANTON VIEW DEVELOPMENT, *et al.*, | |
| | NEXT EVENT: |
| *Defendants.* | REPLIES TO MOTIONS FOR |
| | SUMMARY JUDGMENT |
| | MAY 19, 2025 |

### PLAINTIFFS' OPPOSITION TO DEFENDANT CAPITAL DEVELOPMENT DESIGN, INC.'S MOTION FOR SUMMARY JUDGMENT

COME NOW Plaintiffs LaDonna May, Ade Adenariwo, Theresa Brooks, Denine Edmonds, Ciera Johnson, and Robin McKinney ("Plaintiffs"), by and though their undersigned attorneys, Je Yon Jung, Esq. and LaRuby May, Esq., May Jung LLP and hereby submit this Opposition to Defendant Capitol Development Design, Inc.'s Motion for Summary Judgment ("Motion").

## I. INTRODUCTION

Capitol Development Design, Inc. ("CDDI") seeks summary judgment on Plaintiffs' negligence and breach of contract claims based primarily on alleged deficiencies in Plaintiffs' expert testimony. CDDI's motion fails for multiple reasons. First, CDDI mischaracterizes the nature of the case, which involves catastrophic structural failures in a new residential building that would not have occurred absent negligence. Second, CDDI misrepresents the record evidence, particularly the testimony of Plaintiffs' experts. Third, CDDI ignores established precedent that summary judgment is rarely appropriate for negligence claims, especially in construction cases involving complex factual scenarios.

1

This case presents the quintessential example of a dispute requiring jury determination. Plaintiffs purchased newly constructed condominium units at RiverEast at Grandview Condominiums, located at 1262 Talbert Street, SE, Washington, DC 20020 ("the Property"), that exhibited issues soon after move-in, ultimately leading to emergency evacuation. The record contains substantial evidence that CDDI, as the geotechnical engineer, failed to properly perform its critical role in ensuring site stability, appropriate foundation systems, and suitable backfill materials. These failures directly contributed to the Property's catastrophic defects. Whether considered through the lens of common knowledge that new buildings should not fail catastrophically, or through the abundant expert testimony establishing CDDI's breaches of professional standards, genuine issues of material fact preclude summary judgment. Additionally, CDDI's perfunctory treatment of Plaintiffs' breach of contract claim falls woefully short of meeting its burden as the moving party.

For these reasons and those detailed below, CDDI's Motion should be denied in its entirety.

## II.     STATEMENT OF FACTS

Pursuant to District of Columbia Superior Court Civil Rule 56(b)(2)(A), Plaintiffs incorporate by reference their full responses to CDDI's Statement of Undisputed Material Facts as set forth in Plaintiffs Responses to Defendant Capitol Development Design Inc.'s Statement of Facts as if fully set forth herein. (Ex. C). *See also* Plaintiffs' Exhibit List filed under D.C. Sup. Ct. R. Civ. P. 12-I, (Ex. J), and Declaration of Attorney LaRuby May in Support of Plaintiffs' Oppositions to Motions for Summary Judgment, ¶ 25 (Ex. C-1).

## III.    LEGAL STANDARD

On summary judgment, courts view the evidentiary materials in the record, including any depositions, documents, electronically stored information, affidavits, declarations, admissions, and interrogatory responses, in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Liu v. U.S. Bank Nat'l Assn*, 179 A.3d 871, 876 (D.C. 2018); D.C. Super. Ct. Civ. R. 56(c). Summary judgment is properly granted only if the record

2

contains no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Radbod v. Moghim*, 269 A.3d 1035, 1041 (D.C. 2022); D.C. Super. Ct. Civ. R. 56(a). "A party moving for summary judgment has the burden of proving that there is no issue of material fact . . . ." *Willis v. Cheek*, 387 A.2d 716, 719 (D.C.1978) (citations omitted).

    **IV.**    **CDDI FAILS TO MEET ITS BURDEN FOR SUMMARY JUDGMENT**

        **A.**    **Genuine Issues of Material Fact Preclude Summary Judgment on Negligence**

Issues of negligence are rarely appropriate for summary judgment. *Stehn v. Cody*, 962 F. Supp. 2d 175, 179 (D.D.C. 2013). As courts in the District of Columbia have repeatedly noted, "only in exceptional cases will questions of negligence . . . pass from the realm of fact to one of law." *Paraskevaides v. Four Seasons Wash.*, 292 F.3d 886, 893 (quoting *Shu v. Basinger*, 57 A.2d 295, 295-96 (D.C. 1948)) (cleaned up). This is not the type of "exceptional" case that presents negligence questions for the Court to decide as a matter of law. Even if the Court considers Defendant's argument, questions remain that are properly within the province of the jury.

        **1.**    **Expert testimony is not required**

As set forth in Plaintiffs' Omnibus Opposition to Defendants' Omnibus Joint Opposed Motion to Preclude and Defendant Maddox's Opposed Motion to Preclude Expert Witness ("Omni Opp. to Mtn. to Preclude"), incorporated herein by reference in its entirety, CDDI's services present exactly the type of negligence that does not require expert testimony. Expert testimony is only required in "rare" cases where the subject matter is "so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman." *Columbus Props., Inc. v. O'Connell*, 644 A.2d 444, 447 (D.C. 1994) (citations omitted); *see also KS Condo, LLC v. Fairfax Vill. Condo. VII*, 302 A.3d 503, 512 (D.C. 2023).

Similar to *KS Condo, LLC*, jurors need no specialized knowledge to understand that a geotechnical engineer conducting soil testing must ensure proper soil materials are used according to specifications, conduct sufficient testing to verify compliance, maintain effective

3

Case 1:23-cv-03009-CRC   Document 94-4   Filed 12/29/25   Page 4 of 17
C23-cv-03009; Defs Mot. for Part. Summ. J.
MUSTAFA DECL. EXHIBIT CC

communication with other project participants, and document critical issues that could affect structural integrity. The record shows that CDDI failed to meet basic professional obligations by: recommending inappropriate foundation systems despite known site challenges, Ex. C, Fact No. 27(a)-(b); failing to perform rigorous geotechnical analysis for the tiered wall system, Ex. C, Fact No. 27(c); promoting an inadequate and unsafe design given the problematic soils and challenging topography, Ex. C, Fact No. 27(d); approving unsuitable soil materials contrary to explicit specifications, Ex. C, Fact No. 27(e)-(g); providing insufficient oversight and testing, Ex. C, Fact No. 27(h)-(l); and failing to properly document and communicate critical issues, Ex. C, Fact No. 27(m)-(o). These fundamental failures represent lapses in reasonable care that are understandable to the average layperson without expert testimony. The causal connection between CDDI's actions and the Property's structural defects is equally straightforward for a jury to understand. When a geotechnical engineer allows unsuitable backfill materials to be used, fails to perform sufficient compaction testing to verify compliance, and fails to adequately document and communicate issues to other project participants, the resulting structural collapse establishes an obvious chain of causation that requires no specialized expertise to comprehend.

    Beyond the straightforward application of *KS Condo*, this case also implicates the well-established doctrine that catastrophic failures in new construction create an inference of negligence. A plaintiff can defeat a defendant's motion for summary judgment if a reasonable inference may be drawn from evidence, properly proffered, that the alleged injury would not have occurred but for the defendant's negligence. *See Thompson v. Shoe World, Inc.*, 569 A.2d 187, 190-91 (D.C. 1990). The catastrophic defects in a brand-new building that required emergency evacuation, Ex. C, Fact No. 23, speak for themselves under the principle that "where laymen can say, as a matter of common knowledge and observation, that the type of harm would not ordinarily occur in the absence of negligence, the jury is allowed to infer negligence without expert testimony." *Harris v. Cafritz Mem'l Hosp.*, 364 A.2d 135, 137 (D.C. 1976); *see also* Ex. C, Fact Nos. 29 (unit damage) and 30 (building damage).

4

## 2. Even if expert testimony is required, the record is replete with admissible expert opinion as to the amount of care required of CDDI

CDDI attacks Plaintiffs' experts, contending they are not qualified and offered no specific opinions on geotechnical structural engineering standards.

First, as set forth in Plaintiffs' Omni Opp. to Mtn. to Preclude, experts may be qualified "by knowledge, skill, experience, training, or education" in the relevant field. Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). Importantly, a trial court may not exclude expert testimony "simply because [it] does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Heller v. District of Columbia*, 952 F. Supp. 2d 133, 140 (D.D.C. 2013).

Here, Dr. Cali and Mr. Jones each possess approximately 50 years of professional experience in engineering, construction, and foundation issues. These decades of experience alone satisfy Rule 702's expert qualification requirements. *See Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Aerohotelco, C.A.*, 315 F. Supp. 3d 101, 110-11 (D.D.C. 2018) (collecting cases). Dr. Cali possesses a Ph.D. in civil and environmental engineering with specialized expertise in geotechnical engineering, Ex. C, Fact No. 25, while Mr. Jones is licensed in forty-eight states and the District of Columbia with extensive experience investigating foundation issues, Ex. C, Fact No. 24. Both experts have the requisite knowledge to assess CDDI's geotechnical engineering decisions, which involved fundamental engineering principles related to site planning, foundation systems, soil testing, and coordination with other design professionals.

CDDI's criticism that Mr. Jones is not a geotechnical engineer does not make his report and testimony insufficient. *See Sullivan v. AboveNet Commc'ns*, 112 A.3d 347, 358-59 (D.C. 2015) (rejecting argument that expert must have specific experience with the exact type of construction at issue, finding that expert's general engineering expertise qualified him to testify); *Convit v. Wilson*, 980 A.2d 1104, 1124 n.62 (D.C. 2009) (citing *Kane v. Ryan*, 596 A.2d 562, 566 (D.C.1991) (expert not incompetent to testify as an expert merely because expert is not specialist in particular field of which expert speaks)).

5

CDDI's arguments regarding licensing requirements are likewise meritless. D.C. licensing requirements do not bar experts from testifying in litigation. *See Robinson v. Wash. Metro. Area Transit Auth.*, 858 F. Supp. 2d 33, 40 n.4 (D.D.C. 2012) (rejecting argument that expert should be excluded because he was not licensed in D.C.); *see also* Plaintiffs' Omni Opp to Mtn. to Preclude. Courts have consistently recognized that licensing requirements exist to "assure the public that persons engaged in such occupations or professions have the specialized skills or training required to perform the services offered," not to restrict expert testimony in judicial proceedings. *Robinson*, 858 F. Supp. 2d at 40 n.4. Any perceived limitations in the experts' specific experience are matters of weight for the trier of fact and are "appropriately addressed through cross-examination." *See Heller*, 952 F. Supp. 2d at 142.

Each expert employed a valid methodology. Dr. Cali and Mr. Jones reviewed hundreds of litigation documents—project plans, geotechnical reports, deposition transcripts, test results, and structural assessments—and conducted multiple site visits to observe property conditions. Their approach, which observes relevant evidence and applies specialized knowledge, is widely recognized by courts. *Sullivan*, 112 A.3d at 358-59 (holding that highway engineering expert was qualified to testify about pavement standards despite not personally inspecting the site, as any limitations in the expert's methodology "went to the weight of his testimony rather than its admissibility and therefore presented an issue for the jury to decide") (citation omitted); *Heller*, 952 F. Supp. 2d at 141. Indeed, as the court in *Bazarian Int'l Fin. Assocs., LLC*, 315 F. Supp. 3d at 111 explained, when an expert has decades of experience in a field, as both Dr. Cali and Mr. Jones do, that experience alone can establish a reliable methodology

Second, though experts must "articulate *and reference* a standard of care by which the defendant's actions can be measured," *Clark v. District of Columbia*, 708 A.2d 632, 635 (D.C. 1997) (citation omitted), and relate them to defendant's conduct, *Phillips v. District of Columbia*, 714 A.2d 768, 773 (D.C. 1998), an expert need not recite the magical words "standard of care" when their testimony, taken as a whole, clearly establishes the requisite amount of reasonable care, *District of Columbia v. Wilson*, 721 A.2d 591, 596, 599 (D.C. 1998). *See also Sinai v.*

Case 1:23-cv-03009-CRC   Document 94-4   Filed 12/29/25   Page 7 of 17
C23-cv-03009, Dist's Mot. for Part. Summ.
MUSTAFA DECL. EXHIBIT CC

*Polinger Co.*, 498 A.2d 520, 529 (D.C. 1985) (explaining "standard of care" is consistent but "amount of care" expected of each defendant changes based on circumstances); *Novak v. Cap. Mgmt. & Dev. Corp.*, 570 F.3d 305, 313 (D.C. Cir. 2009) (finding testimony that referred to "standard practice," "widespread practice," and "normal practice" sufficient).[1]

When opining on the reasonable amount of care, an expert is not required to "identify every authority on which he relies, quoting chapter and verse," as long as the expert provides a substantive basis for the opinion. *Wilson*, 721 A.2d at 599. *Sullivan*, 112 A.3d at 358 (finding highway engineering expert's testimony sufficient where he explained established standards for backfilling pavement and defendant's failure to compact the pavement in violation of those standards, despite not citing specific provisions from the American Association of State Highway and Transportation Officials standards); *Butera v. District of Columbia*, 235 F.3d 637, 660 (D.C. Cir. 2001) (finding expert testimony sufficient where based on consultation with officers, review of guidelines, and examination of technical manuals).

In construction cases, courts take a practical approach to applying these principles to determine the sufficiency of expert opinion about the amount of care required of a professional. In *Bell v. Jones*, 523 A.2d 982, 989-90 (D.C. 1987), the court found a surveyor's expert testimony sufficient where the expert described what "a prudent surveyor" would do—examining records, conducting field measurements, verifying calculations, and performing specific verification steps. *See also Levy v. Schnabel Found. Co.*, 584 A.2d 1251, 1255 (D.C. 1991) (finding sufficient, "the applicable standard of care for persons engaged in sheeting, shoring, and underpinning was to take all necessary steps to prevent any movement that would cause damage to adjacent properties.")

Mr. Jones and Dr. Cali, independently and collectively, provide an integrated opinion as to the amount of care required of CDDI. Namely, CDDI was required to undertake (a) adequate site planning; (b) adequate project management; (c) adequate communication and coordination

---

[1] *See also* Plaintiffs' Omnibus Opposition to Defendants' Omnibus Joint Motion for Summary Judgment ("Plaintiffs' MSJ Omni Opp"), incorporated in its entirety by reference herein.

7

among contractors developing, designing, and constructing the Property; (d) proper design or adherence to approved plans and specifications; and (e) adequate quality control and assurance. Ex. C, Fact No. 26. Applying this framework to CDDI, Mr. Jones provides a structural engineering analysis focused on project management and engineering practices, while Dr. Cali offers a geotechnical assessment examining soil conditions and site stability. Ex. C, Fact Nos. 24, 25. Together, they present an integrated opinion encompassing site planning, coordination, appropriate design considerations, and quality control. Ex. C, Fact Nos. 24-27.

CDDI's cherry-picked testimony completely mischaracterizes the substance of the experts' testimony. Despite CDDI's claim that Dr. Cali's reports do not include the phrase "standard of care," the record shows that Dr. Cali extensively articulated the requisite amount of care in his deposition testimony, including testimony regarding foundational support, geotechnical investigation and design, ethical obligations, slope stability factors, friction angles, complex wall systems, safe design for risky sites, and provision of as-built drawings. Ex. C, Fact No. 26; *see also* Ex. C, Response to Fact No. 8.

The confluence of expert opinion from Plaintiffs' experts creates a robust record establishing the applicable amount of care that is more than sufficient to overcome CDDI's attacks. *See Sullivan*, 112 A.3d at 354 (emphasizing that when "it is possible to derive conflicting inferences from the evidence, the trial judge should allow the case to go to the jury" and that "[a]s long as there is some evidence from which jurors could find that the party has met its burden," judgment as a matter of law is inappropriate).

### 3. D.C. regulations and professional associations offer further evidence of the amount of care required of CDDI

Title 17 of the District of Columbia Municipal Regulations establish mandatory standards for professional engineers like CDDI. Specifically, CDDI was required to protect public safety and welfare in the performance of its services, to perform engineering services only in areas where it was qualified by education and experience, and to maintain direct supervisory control over all engineering work requiring professional judgment. D.C. Mun. Regs. tit. 17, §§ 1517.3-

8

Case 1:23-cv-03009-CRC   Document 94-4   Filed 12/29/25   Page 9 of 17
C.23-cv-03009; Defs Mot. for Part. Summ.
MUSTAFA DECL. EXHIBIT CC

1517.5. CDDI was also obligated to inform its employer, contractor, and the appropriate regulatory agencies if its professional engineering judgment was overruled in a way that endangered public safety, health, or welfare. *Id.*

The National Society of Professional Engineers further establishes that a professional's obligation is to public safety first and client needs second. This aligns with Dr. Cali's testimony that when dealing with structural elements intended for human occupancy, engineers have the professional duty to report deficiencies or oversights in design or construction, even if construction needs to be stopped so serious concerns can be addressed. Ex. C, Fact No. 26.

This regulatory framework, together with CDDI's professional obligations, establish unequivocal obligations for CDDI to exercise appropriate professional judgment, maintain direct supervision over engineering work, and act to protect public safety - standards that directly align with the expert testimony provided by Dr. Cali and Mr. Jones. CDDI's arguments completely ignore these explicit regulatory standards governing its geotechnical engineering practice in the District. When viewed alongside the expert testimony, these regulations create genuine factual disputes about CDDI's compliance with applicable standards of care that preclude summary judgment.

### 4. Multiple experts offer opinions that readily create factual disputes regarding CDDI's failure to exercise reasonable care

When viewed in the light most favorable to Plaintiffs, as required at the summary judgment stage, the extensive evidence in this case, including Plaintiff and Defense expert reports and testimony,[2] creates numerous genuine issues of material fact regarding CDDI's failure to exercise reasonable care.

---

[2] Courts in this jurisdiction allow plaintiffs to utilize defendants' experts in establishing a prima facie case. *See Abbey v. Jackson*, 483 A.2d 330, 333 (D.C. 1984) (holding that a plaintiff can establish a prima facie case through the expert testimony of defendant physicians and defense witnesses without introducing independent expert testimony); *Page v. Villa-Real*, No. 1:86-cv-02786, 1988 WL 126239, at *2 (D.D.C. Nov. 16, 1988) (specifically allowing plaintiff to use a retained expert originally identified by the defendant in his case-in-chief, rejecting defendant's objections, and noting that "Dr. Smith's background, the basis for his testimony, and its content

9

First, CDDI recommended an inadequate foundation system despite known challenging site conditions. Ex. C, Fact No. 27(a)-(b). CDDI understood the difficult challenges of the Property's slope and soils from its previous 2007 analysis, yet recommended a shallow foundation system with shallow spread footings that ultimately epically failed. Ex. C, Fact No. 27(a)-(b). Even more troubling, CDDI recommended a caisson system to raise the slope stability factor of safety to only 1.3, which should have been, at minimum, 1.4-1.5 due to the complexity of the stacked retaining wall system and building loads on fill soils. Ex. C, Fact No. 27(b); *see also* Ex. C, Fact Nos. 20, 21 (describing tiered retaining wall system).

Second, CDDI failed to perform rigorous geotechnical analysis for the tiered wall system. Ex. C, Fact No. 27(c). As noted in Defendant FES's expert report from Dr, Acheampong, "The developer and design team did not recognize the significant complexity of this project involving three tiered or terraced wall systems with different wall types ([MSE] and concrete walls), with incompatible responses and behaviors under loading regimes."[3] Ex. C, Fact No. 27(c). It should have been patently obvious to CDDI that stacking multiple retaining wall systems with a backfill drainage system, with known problematic soils and challenging topography, then placing a large four-story residential structure on top which utilizes shallow foundations with spread footings was neither an adequate nor safe design. Ex. C, Fact No. 27(d).

Third, CDDI failed in its quality control obligations. Ex. C, Fact No. 27(e)-(g). CDDI's contractual scope of work required it to "observe and monitor the conditions of bottom of excavations" and "ensure that all unsuitable materials have been removed" and "monitor the placement of fill and backfill operations." Ex. C, Fact No. 27(e). During June-August 2015 pre-MSE Wall construction, CDDI reported that "sandy lean CLAY (CL) and silty SAND with

---

are all known by the defendant"); *Levitsky v. Prince George's County*, 439 A.2d 600, 605 (Md. Ct. Spec. App. 1982) (holding that the trial court did not err in permitting the county to call the condemnee's retained expert appraiser as a witness during its case-in-chief, distinguishing between opinions from retained experts versus opinions derived from confidential client communications).

[3] Stanton View Development LLC ("SVD") was the developer for the project along with various other roles. Ex. C, Fact No. 22.

Case 1:23-cv-03009-GPC  Document 94-4  Filed 12/29/25  Page 11 of 17
1:23-cv-03009, Defs' Mot. for Part. Summ.
MUSTAFA DECL. EXHIBIT CC

gravel (SM)" were properly utilized and compacted per Project specifications. As such, the MSE Wall construction proceeded. Ex. C, Fact No. 27(e). In October 2015, during its own post-MSE Wall construction, CDDI conducted subsurface exploration which revealed "soft to medium stiff fat clays" in the backfill. Ex. C, Fact No. 27(e). This nonconforming backfill material, i.e., fat clay / heavy clay, high-plasticity soils, behind the MSE Wall was used, contrary to Sheet S3.01 of Skarda's drawing set which explicitly states, "unsuitable soils for backfill (heavy clays or organic soils) shall not be used." Ex. C, Fact No. 27(f). Likewise, CDDI failed to properly document and report that varying strength geogrid material was placed at every layer of fill, which directly contradicted the MSE Wall plans prepared by Skarda that specified geogrid placement at varying courses of block. Ex. C, Fact No. 27(g).

Fourth, CDDI's testing and monitoring were grossly inadequate. CDDI sent an inexperienced technician to monitor soils placed behind the MSE wall. Ex. C, Fact No. 27(h). CDDI performed a single Proctor test on the backfill materials despite the variability of soil types. Ex. C, Fact No. 27(i). Proctor test is "a measure of the maximum density to which soil can be compacted at its optimum moisture content under controlled laboratory conditions. If it is not tested properly and/or compacted to 95% Standard Proctor density, there can be a loss of bearing capacity foundation, and structural damage to the building. That is exactly what happened here. Ex. C. Fact No. 27(i). CDDI failed to specify the frequency of compaction tests in its documentation and performed an insufficient number of compaction tests on the MSE Wall backfill materials. Ex. C, Fact No. 27(j)-(k). The May 2022 MCRE Report discovered soil samples taken from the MSE Wall backfill were lower in density than reported by CDDI. Ex. C, Fact No. 27(l).

Fifth, CDDI failed to properly document changes and maintain effective communication and coordination throughout the Project. Ex. C, Fact No. 27(m)-(n). CDDI did not produce or request as-built plans showing changes to the MSE wall, contrary to generally accepted professional standards. Ex. C, Fact No. 27(m). CDDI failed to maintain effective communication and coordination throughout the Project, as evidenced by internal conflicts, scope management

11

issues, and failure to adequately collaborate with other parties, including not informing the structural engineer of changes made to the MSE Wall during construction despite being on site. Ex. C, Fact No. 27(n). Defendant FES's expert report from Dr. Acheampong noted that "The planning, design and construction of this development was devoid of the required consistent coordination amongst the designers/engineers and performing detailed soil-structure interaction analysis due to the elevated level of complexity of this tiered wall system supporting the building units." Ex. C, Fact No. 27(n). Additionally, CDDI failed to extend the caisson foundation elements fully to the Northwest and Southwest corners of the MSE Wall, which allowed for significant settlement at the MSE wall corners. Ex. C, Fact No. 27(o).

      CDDI's characterization of Dr. Cali's testimony regarding the Collin Report—egregiously contending it endorses all opinions therein—cannot overcome this extensive evidence of breach. Motion p. 11-13. Dr. Cali specifically identified disagreements with the Collin Report about CDDI's testing methodology, including the number of Proctor tests performed, which directly relates to one of CDDI's key failures. Ex. C, Fact No. 27(i).

      Moreover, Dr. Cali's characterization of the report as "thorough" and "well done" clearly addressed its technical analysis, not its conclusions that CDDI exercised the requisite amount of care, as evidenced by his statement included in CDDI's excerpted testimony that he agreed with the report's "stability analyses" being "representative of what we think happened." Motion p. 12. CDDI's attempt to construe Dr. Cali's limited agreement with "most of the conclusions" as an endorsement of all twenty-seven conclusions, including those regarding CDDI's duty and breaches, ignores his extensive testimony detailing CDDI's specific failures—from recommending inadequate foundation systems to approving unsuitable backfill materials. Ex. C, Fact No. 27(a)-(o).

      Finally, CDDI conveniently ignores that multiple other experts found fault with CDDI's performance. Defendant FES's expert report from Dr. Acheampong noted the "apparent lack of involvement and/or input from CDDI, the geotechnical engineer of record," and criticized "the planning, design and construction of this development" as being "devoid of the required

12

consistent coordination." Ex. C, Fact No. 27(c), (n). Defendant Skarda's expert report from Mr. Witjenburg and Mr. Kulbacki identified CDDI's failure to inform the structural engineer of changes to the MSE Wall during construction. Ex. C, Fact No. 27(n).

These expert opinions of both Plaintiffs and Defendants directly contradict CDDI's claim that it exercised the requisite amount of care and create a significant opening to rebut its report at trial. *See Levy*, 584 A.2d at 1255 ("Where an expert in the field has testified that specific precautionary measures would have reduced or eliminated the risk to the plaintiff, and where the defendant has failed to present any explanation of its failure to utilize these measures, some inference of negligence might rationally be drawn.")

### 5. Experts agree CDDI's actions contributed to the structural failures

Proximate cause, consisting of cause-in-fact and foreseeability, is "ordinarily a question of fact for the jury." *Hill v. McDonald*, 442 A.2d 133, 137 (D.C. 1982) (citing *Hanna v. Fletcher*, 231 F.2d 469, 473 (D.C. Cir. 1956)). Under the "substantial factor" test, liability attaches when the defendant's conduct significantly contributes to causing harm. *Mancuso v. Chapel Valley Landscape Co.*, 318 A.3d 547, 554 (D.C. 2024). The question becomes one of law *only* when "it is clear that reasonable men could draw but one conclusion from the facts alleged." *Hill*, 231 F.2d at 137. District of Columbia courts recognize that evidence of inaction facing foreseeable danger to third parties satisfies the proximate cause requirement, *see Graves v. United States*, 517 F. Supp. 95, 97–98 (D.D.C. 1981), and summary judgment is inappropriate unless "absolutely clear" that a defendant's conduct could not have been a proximate cause, *Boodoo v. Cary*, 21 F.3d 1157, 1161 (D.C. Cir. 1994).

The record contains substantial evidence that CDDI's actions and inactions were a substantial factor in causing Plaintiffs' damages. CDDI's approach to soil monitoring and compaction testing directly led to the presence of fat clay soils behind the MSE Wall. Ex. C, Fact No. 28. These inappropriate soils, which CDDI had a contractual responsibility to test and report for conformance, were a primary cause of the structural failures that damaged Plaintiffs' property. Ex. C, Fact No. 28. Multiple experts, including Dr. Cali and Defense experts for Skarda

13

and FES, have confirmed this causal connection. Ex. C, Fact No. 29. This evidence of causation creates genuine factual disputes that a reasonable jury must resolve.[4]

### B. Genuine Issues of Material Fact Preclude Summary Judgment on Breach of Contract

Addressing the breach of contract claim solely through the lens of the negligence claim, CDDI's motion for summary judgment on Count XXI (Breach of Contract) consists of a single conclusory sentence: "without establishing CDDI's professional negligence, Plaintiffs cannot prove CDDI breached its contract." This cursory treatment falls far short of the burden placed on a moving party seeking summary judgment.

District of Columbia courts have made clear that "it is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008). Yet this is precisely what CDDI has done. CDDI has failed to address any element of Plaintiffs' breach of contract claim, including: (1) the existence and terms of the relevant contract(s); (2) CDDI's specific contractual obligations; (3) evidence of breach of those specific obligations; and (4) resulting damages.

Even more fundamentally, its single-sentence argument incorrectly assumes that Plaintiffs' breach of contract claim is wholly derivative of their negligence claim. However, contractual obligations and tort duties represent distinct legal theories with different elements of

---

[4] CDDI's violation of regulatory requirements also supports a negligence per se theory. "The general rule in this jurisdiction is that where a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his relationship to the statute, unexplained violation of that standard renders the defendant negligent as a matter of law." *Chadbourne v. Kappaz*, 779 A.2d 293, 295 (D.C. 2001); *see also Zhou v. Jennifer Mall Restaurant, Inc.,* 534 A.2d 1268, 1273 (D.C.1987) ("The rule that violation of an ordinance intended to promote public safety is negligence . . . is rooted in the principle that failure to comply with a statutory requirement designed to protect public safety is to fall short of the standard of diligence to which those who live in organized society are under a duty to conform.") (internal quotation marks, brackets and citations omitted). Here, the professional requirements were specifically designed to protect the public from unsafe practices, and CDDI's unexplained violations of these standards directly contributed to the structural failures that harmed Plaintiffs.

Case 1:23-cv-03009-GRC   Document 94-4   Filed 12/29/25   Page 15 of 17
1:23-cv-03009, Decl. ISO Mot. for Part. Summ.
MUSTAFA DECL. EXHIBIT CC

proof. *See, e.g., Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008) (distinguishing between tort and contract claims). A party can breach contractual obligations even while meeting the requisite amount of care for negligence purposes, and vice versa.

The record demonstrates that CDDI had specific contractual obligations that it failed to fulfill. As detailed in Section IV.A above, CDDI's contractual scope of work required it to "observe and monitor the conditions of bottom of excavations" and "ensure that all unsuitable materials have been removed" and "monitor the placement of fill and backfill operations." Ex. C, Fact No. 27(e). The evidence shows that CDDI breached these specific contractual requirements by, among other things, allowing the use of "fat clay / heavy clay, high-plasticity soils" as backfill despite the Project specifications that explicitly stated "unsuitable soils for backfill (heavy clays or organic soils) shall not be used." Ex. C, Fact No. 27(f).

By failing to address these and other specific contractual obligations in its motion, CDDI fails to meet its initial burden as the moving party on summary judgment. *See Osbourne v. Capital City Mortgage Corp.*, 667 A.2d 1321, 1324 (D.C. 1995) (moving party has the burden to establish no genuine issue of material fact). It cannot cure this deficiency by making new arguments on reply. The Court should deny summary judgment on the breach of contract claim on this basis alone.

## V. CONCLUSION

For the foregoing reasons set forth herein, CDDI's Motion should be denied in its entirety.

Case 1:23-cv-03009-GRC   Document 04-4   Filed 12/29/25   Page 16 of 17
1:23-cv-03009, Decl's Mot. for Part. Summ.
MUSTAFA DECL. EXHIBIT CC

Date:  April 28, 2025                    Respectfully submitted,

                                                  MAY JUNG, LLP

Je Yon Jung
LaRuby May
2006 MLK Jr. Ave, SE
Suite 210
Washington, DC 20020
Tel: (202) 938-3524
jeyon@mayjung.com
laruby@mayjung.com
*Counsel for Plaintiffs*

16

Case 1:23-cv-03009-GBC Document 94-4 Filed 12/29/25 Page 17 of 17
1:23-cv-03009, Defs Mot. for Part. Summ.
MUSTAFA DECL. EXHIBIT CC

# CERTIFICATE OF SERVICE

I, Jaeun Wakeling, certify that on April 28, 2025, a copy of the foregoing PLAINTIFFS' OPPOSITION TO DEFENDANT CDDI'S MOTION FOR SUMMARY JUDGMENT was served via the Court's electronic filing system to all counsel of record.

/s/ Jaeun Wakeling

Steinhilber, August     asteinhilber@tthlaw.com
*Attorney for Defendants Rivereast at Anacostia LLC, Stanton View Development, Andrew Battle, Donte Lee, and Jerry Vines*

Beiramee, Bizhan     bbeiramee@beiramee.com
Armstrong, Robert     rarmstrong@beiramee.com
Berger, Ashley     aberger@beiramee.com
*Attorneys for Defendant SGA Companies, Inc.*

Flint, Justin     flint@ewdc.com
Shor, Channing     shor@ewdc.com
Davis, Kennedy     davis@ewdc.com
*Attorneys for Defendant Skarda and Associates, Inc.*

Carback, Joshua T.     jcarback@fandpnet.com
Jarrar, Ferras M.     fjarrar@fandpnet.com
Alonso, Sarah     salonso@fandpnet.com
*Attorney for Defendant Maddox Engineers and Surveyors, Inc.*

Orshoski, Curtis A.     cao@leeshoemaker.com
Scott Shannon     jss@leeshoemaker.com
*Attorneys for Defendant Capitol Development Design, Inc.*

Burton, Meighan G.     mburton@semmes.com
*Attorneys for Defendant FES Group LLC*

Schwinn, Donald     s.schwinn@jocs-law.com
Duddy, Dannel C.     dduddy@hccw.com
Malone, Donna     d.malone@jocs-law.com

*Attorneys for Defendant M&F Concrete, Inc.*